UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                          :

SECURITIES AND EXCHANGE COMMISSION,    :
                          :

                 *Plaintiff,*    :    No. 07 CV 9606
                          :

        v.                  :    Judge Naomi R. Buchwald
                          :

OLEKSANDR DOROZHKO,            :
                          :

               *Defendant.*    :
------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF OLEKSANDR DOROZHKO'S MOTION TO DISMISS THE COMPLAINT AND TO VACATE THE TEMPORARY RESTRAINING ORDER, AN ORDER FREEZING ASSETS <u>AND GRANTING OTHER RELIEF</u>

CHARLES A. ROSS & ASSOCIATES, LLC
Charles A. Ross (CR-1331)
Christopher L. Padurano (CP-2587)
Trinity Centre
111 Broadway, Suite 1401
New York, New York 10006
(212) 616-3030

Attorneys for Defendant Oleksandr Dorozhko

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                        1

RELEVENT ALLEGATIONS IN THE COMPLAINT                                        3

ARGUMENT                                                                     5

I.    THE COMMISSION'S ALLEGATIONS OF FRAUD UNDER
      RULE 10b-5 ARE INSUFFICIENT AS A MATTER OF LAW                         5

      A.    Rule 10b-5 Does Not Proscribe Silence in the Absence
            of a Duty to Disclose                                            5

      B.    Neither Theft of Information, Nor Possession of Stolen
            Information, Creates a Duty to Speak                             7

      C.    The Complaint Does Not Otherwise Adequately Plead
            Actionable Fraud Under Rule 10b-5                               11

      D.    The Complaint Fails to Satisfy the Strict Pleading Standards
            of Rule 9(b)                                                    12

            1.    The Commission Fails to Plead with Particularity Any
                  Fraudulent Act by Mr. Dorozhko                            13

            2.    The Commission Fails to Plead with Particularity Any
                  Facts that Support Its Conclusory Allegations of Scienter 14

II.   THE COURT SHOULD VACATE THE TEMPORARY
      RESTRAINING ORDER AND LIFT THE ASSET FREEZE                           15

      A.    The Commission Is Not Entitled to Preliminary Injunction        15

            1.    The Commission's Theory Is Fatally Flawed                 15

            2.    The Commission's Materiality Allegations Are
                  Speculative                                               16

            3.    There Is No Likelihood of Future Violations               17

      B.    The Asset Freeze Should Be Lifted                               17

III.    THIS COURT LACKS PERSONAL JURISDICTION OVER
        MR. DOROZHKO                                              19

CONCLUSION                                                       21

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acito v. IMCERA Group, Inc.,*
    47 F.3d 47 (2d Cir. 1995)        13, 14

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County,*
    480 U.S. 102 (1987)        20

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)        5, 16

*Bersch v. Drexel Firestone, Inc.,*
    519 F.2d 974 (2d Cir. 1975)        19

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)        19

*In re Carter-Wallace, Inc. Sec. Litig.,*
    220 F.3d 36 (2d Cir. 2000)        13, 14

*Chew v. Dietrich,*
    143 F.3d 24 (2d Cir. 1998)        19

*Chiarella v. United States,*
    445 U.S. 222 (1980)        5, 6, 9

*Chill v. Gen. Elec. Co.,*
    101 F.3d 263 (2d Cir. 1996)        13, 14

*Dirks. v. SEC,*
    463 U.S. 646 (1983)        6

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)        13, 14

*Leventhal v. Tow,*
    48 F. Supp.2d 104 (D. Conn. 1999)        15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996)        20, 21

*In re Parmalat Sec. Litig.,*
    376 F.Supp. 2d 472 (S.D.N.Y. 2005)        12

*Ross v. Bolton,*
    904 F.2d 819 (2d Cir. 1990)      13

*SEC v. Alexander,*
    00 Civ. 7290, 2003 WL 21196852 (S.D.N.Y. May 20, 2003)      20

*SEC v. Alexander,*
    160 F.Supp. 2d 642 (S.D.N.Y. 2001)      20

*SEC v. Ballesteros Franco,*
    253 F.Supp.2d 720 (S.D.N.Y. 2003)      14

*SEC v. Cavanagh,*
    155 F.3d 129 (2d Cir. 1998)      17

*SEC v. Gonzalez de Castilla,*
    145 F.Supp.2d 402 (S.D.N.Y. 2001)      15, 17

*SEC v. Materia,*
    745 F.2D 197 (2d Cir. 1984)      8

*SEC v. Monarch Funding Corp.,*
    192 F.3d 295 (2d Cir. 1999)      5, 11

*SEC v. Penthouse Int'l, Inc.,*
    390 F.Supp.2d 344 (S.D.N.Y. 2005)      13

*SEC v. Pittsford Capital Income Partners,*
    06 Civ. 6353, 2007 WL 2455124 (W.D.N.Y. Aug. 23, 2007)      18

*SEC v. Softpoint, Inc.,*
    95 Civ. 2951, 2001 WL 43611 (S.D.N.Y. Jan. 18, 2001)      20

*SEC v. Switzer,*
    590 F.Supp. 756 (W.D. Okla. 1984)      9, 10

*SEC v. Terry's Tips, Inc.,*
    409 F. Supp.2d 526 (D. Vt. 2006)      13

*SEC v. Unifund SAL,*
    910 F.2d 1028 (2d Cir. 1990)      15, 17, 19

*San Leandro Emergency Med. Group Profit Sharing Plan v.*
*Philip Morris Cos., Inc.,*
    75 F.3d 801 (2d Cir. 1994)      15

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994)                                      13, 14, 15

*Simpson v. AOL Time Warner Inc.,*
    452 F.3d 1040 (9th Cir. 2006)                                    12

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976)                                              16

*In re Tamoxifen Citrate Antitrust Litig.,*
    262 F.Supp.2d 17 (E.D.N.Y. 2003)                                 19

*United States v. Bongiorno,*
    05 Cr. 390, 2006 WL 1140864 (S.D.N.Y. May 1, 2006)               12

*United States v. Cassese,*
    273 F.Supp.2d 481 (S.D.N.Y. 2003),
    aff'd on other grounds, 428 F.3d 92 (2d Cir. 2005)               8, 9, 10

*United States v. Chestman,*
    947 F.2d 551 (2d Cir. 1991)                                      6

*United States v. Cusimano,*
    123 F.3d 83 (2d Cir. 1997)                                       7, 16

*United States v. Falcone,*
    257 F.3d 226 (2d Cir. 2001)                                      6

*United States v. Libera,*
    989 F.2d 596 (2d Cir. 1993)                                      8

*United States v. O'Hagan,*
    521 U.S. 642 (1997)                                              6, 7, 8

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)                                              19

## FEDERAL STATUTES

15 U.S.C. § 78u(d)(3) (2006)                                         18

Fed. R. Civ. P. 9(b)                                                 1, 12, 13, 14

Defendant Oleksandr Dorozhko respectfully submits this memorandum of law in support of his motion: (i) pursuant to Rules 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules" or "Fed. R. Civ. P."), to dismiss with prejudice the Complaint, dated October 29, 2007 (the "Complaint" or "Compl."), and (ii) to vacate the Temporary Restraining Order, An Order Freezing Assets, and Granting Other Relief, filed October 29, 2007.  For the reasons set forth herein, despite the superficial appeal of the Securities and Exchange Commission's ("SEC" or "Commission") fraud claim, the relief sought and obtained to date is not warranted under the federal securities laws given the conduct alleged.

## PRELIMINARY STATEMENT

The SEC has been careful in this instant matter to refrain from using the term "insider trading" to describe what it alleges is unlawful conduct.  This is well-grounded since the Commission, to prevail on an insider trading theory, must plead and prove that Mr. Dorozhko owed a fiduciary (or similar) duty to the source of the alleged material, non-public information. The failure of the Commission to allege the existence of a duty makes its understanding clear that Mr. Dorozhko did not owe a duty to IMS Health Incorporated ("IMS Health") or its shareholders.  In short, Mr. Dorozhko agrees that this is not a viable inside trading case.

The Commission instead relies on a more general "scheme to defraud" approach, generously using descriptive terms such as "highly suspicious" and "hacking."  Stripped of this overblown rhetoric, then, the gravamen of this suit is this:  Mr. Dorozhko stole material, non-public information from IMS Health, traded on the basis of that information without disclosing it to the investing public, and profited greatly.  Although the Commission does not come out and say it – instead choosing to apply the moniker "fraudulent scheme" – it claims that

Mr. Dorozhko's act of trading while in possession of stolen material, non-public information is actionable under Rule 10b-5. Thus, as the Commission would have it, either the trading or the theft, or some combination of the two, constitutes a Rule 10b-5 violation. The problem with this theory, even if the facts alleged in support of it were true, is that a scheme that relies on mere non-disclosure is not actionable under Rule 10b-5 in the absence of a duty to speak.

Moreover, since the Complaint does not allege that Mr. Dorozhko made misrepresentations, false statements, or even half-truths to anyone in the securities markets, the SEC is left to allege that Mr. Dorozhko's purported conduct is somehow deceitful under Rule 10b-5. This assertion is similarly foreclosed because the SEC has not alleged that Mr. Dorozhko's conduct had the effect of creating a false impression or that he otherwise misled investors. There can be no fraud without some form of deception, and the SEC has not sufficiently alleged anything remotely approaching deceptive conduct.

Indeed, theft does not equal fraud, regardless of the label the Commission places on it. The SEC is not authorized to proceed on the facts alleged because Rule 10b-5 does not reach the theft of information by non-insiders or others lacking a duty to the source of the information. In short, the Complaint is an inartful attempt to apply the misappropriation theory of insider trading to facts that courts have continually rejected. In the absence of any viable theory under Rule 10b-5, the Complaint should be dismissed.

The Complaint's flawed theory of liability necessarily means that the asset freeze and Temporary Restraining Order in this instant matter are unwarranted. There is little likelihood of the Commission succeeding on the merits, thus undermining its entitlement to the extraordinary relief that has already been granted. The Court's Temporary Restraining Order, An Order Freezing Assets, and Granting Other Relief should therefore be vacated.

Additionally, the Commission has not shown that approximately $280,000 in frozen trading profits would be forfeitable because of any alleged securities law violation. Mr. Dorozhko therefore respectfully requests that these funds be released as soon as practicable.

## RELEVANT ALLEGATIONS IN THE COMPLAINT

Mr. Dorozhko is alleged in the Commission's complaint to be a 53-year-old Ukrainian national who lives and works in Uzhgorod, Ukraine. The SEC notes that Mr. Dorozhko is an independent engineering consultant in the energy industry. *See* Compl. ¶ 8. According to the Complaint, he has a net income of around $45,000 and a net worth of between $100,000 and $250,000. *Id.* The Commission claims that Mr. Dorozhko, in September 2007, began the process of opening an account at Interactive Brokers, a registered broker-dealer based in Greenwich, Connecticut. *Id.* ¶¶ 10, 14. On or about October 4, 2007, Mr. Dorozhko funded his account at Interactive Brokers by wiring $42,500 (USD) from Central European International Bank Limited to Interactive Brokers. *Id.* ¶ 14. On October 10, 2007, Interactive Brokers approved the opening of the trading account in Mr. Dorozhko's name through its affiliate located in the United Kingdom. Mr. Dorozhko was authorized to trade in stocks and options. *Id.* ¶ 15.

The Commission alleges that Mr. Dorozhko, while in possession of material non-public information regarding the impending negative earnings announcement of IMS Health, purchased 630 out-of-the-money and at-the-money put options on IMS Health's common stock. According to the SEC, Mr. Dorozhko, just hours before the market closed, purchased 300 Oct 25 out-of-the-money and 330 Oct 30 at-the-money IMS Health put options through a series of transactions executed in his personal Interactive Brokers trading account. *Id.* ¶ 16. The Oct 25 and Oct 30 IMS Health put options were slated to expire on October 20, 2007, only three days after Mr. Dorozhko purchased them. The Commission notes that Mr. Dorozhko's October series

put options expired three days after he purchased them and could only be traded for two days. *Id.* ¶ 17.

The Commission highlights that the total cost of Mr. Dorozhko's IMS Health options was $41,670.90, approximately 99% of the cash value of his account at that time. *Id.* ¶ 18. Additionally, the Commission indicates that Mr. Dorozhko's put option purchases represented almost 90% of all customer purchases in the Oct 25 and Oct 30 option series between September 4, 2007 and October 17, 2007. *Id.* ¶ 19.

After the securities market closed on October 17, 2007, IMS Health reported third-quarter earnings of $0.29 per share, which was 28% below the analyst's consensus estimates of $0.40 earnings per share and 15% below earnings of $0.34 per share reported by IMS Health for the same quarter the previous year. *Id.* ¶ 21. On October 18, 2007, the price of IMS Health's stock fell to $21.20 per share, 28% lower than the closing price on October 17, 2007. *Id.* ¶ 22. That same day, Mr. Dorozhko sold all of his IMS Health put options and realized proceeds of over $328,000 and profits of $286,456.59. *Id.* ¶ 23. Interactive Brokers, on October 19, 2007, placed certain restrictions on Mr. Dorozhko's account and began an internal investigation. *Id.* ¶ 25.

In addition, it is important to note that while the Commission alleges in conclusory fashion that Mr. Dorozhko "gained access to material nonpublic information regarding IMS Health's third quarter earnings ... through fraudulent devices, schemes or artifices, which may include, but are not limited to, hacking into computer networks," it provides not a single fact to support this bald assertion. Indeed, simply because the Commission claims a "fraudulent device" was used does not make it so without facts to support it.

**ARGUMENT**

## I.    THE COMMISSION'S ALLEGATIONS OF FRAUD UNDER RULE 10b-5 ARE INSUFFICIENT AS A MATTER OF LAW

The Commission's theory of fraud in this case is simply unsustainable.  First, even assuming the information Mr. Dorozhko purportedly traded on was material, non-public information, trading while in possession of such information, without more, does not violate Rule 10b-5.  Second, combining the element of "theft" with the bare allegation of a "scheme" does not rectify this inadequacy.  Courts have continually rejected the notion that trading on stolen information is actionable, unless the trader was violating a duty to the source of the information.  The only conceivable remaining theory of liability lies in the uncertain terrain under Rule 10b-5 where there is neither a duty to disclose, nor any false statements or misrepresentations.  Perhaps viable in other contexts involving actual deception, the pleadings here are deficient since they fail to allege that Mr. Dorozhko employed a fraudulent device that created any kind of false impression or misled anyone in any way whatsoever.

### A.    Rule 10b-5 Does Not Proscribe Silence in the Absence of a Duty to Disclose

In the absence of any duty to speak, Mr. Dorozhko was free to remain silent while trading with material, non-public information in hand.  *See Chiarella v. United States,* 445 U.S. 222, 235 (1980) (noting that "when an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak"); *see also Basic Inc. v. Levinson,* 485 U.S. 224, 239 n. 17 (1988) (commenting that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."); *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999) (holding that omissions are actionable when there is a duty to speak).  There is "no 'general duty between all participants in market transactions to forgo actions based on material, nonpublic information.'" *United States v. O'Hagan,* 521 U.S. 642, 661 (1997) (quoting *Chiarella,* 445 U.S. at 233); *see*

*also United States v. Falcone*, 257 F.3d 226, 229 (2d Cir. 2001) (finding that there is no general duty of disclosure between all those who invest in the stock market).  As the Supreme Court held in *Chiarella*, "a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information." *Chiarella*, 445 U.S. at 235.

Consequently, liability accrues under Rule 10b-5 for trading while in possession of material, non-public information only where the information was obtained and exploited in violation of a duty to the source of the information.  Generally, insider trading is unlawful under Rule 10b-5 because (1) an insider breached a duty to a corporation and its shareholders by trading on material, non-public information, *see Dirks v. SEC*, 463 U.S. 646, 653 (1983); *Chiarella*, 445 U.S. at 227-35; or (2) a trader breached a fiduciary or similar duty of trust and confidence by misappropriating and then trading on information that belonged to his principal (the "misappropriation" theory).  *See United States v. O'Hagan*, 521 U.S. at 651-52; *United States v. Chestman*, 947 F.2d 551, 564-67 (2d Cir. 1991).

The Commission has elected not to pursue these deep-rooted theories of insider-trading liability under Rule 10b-5.  The rationale for this decision is clear – any such attempt would be swiftly rejected because there is no basis to allege that Mr. Dorozhko owed a duty to IMS Health.  As an alternative to the well-established theories of insider trading liability, the Commission is left to pursue a novel and speculative claim that Mr. Dorozhko's purported conduct somehow constitutes fraud under Rule 10b-5.  As demonstrated below, the Commission cannot stretch Rule 10b-5 beyond the limits of firmly entrenched Supreme Court precedent.  Here, Mr. Dorozhko simply remained silent with respect to the purported information allegedly in his possession.   There are no allegations he made a false representation or other

6

misrepresentation. Accordingly, there is no viable basis on which the Commission can proceed under Rule 10b-5.

### B. Neither Theft of Information, Nor Possession of Stolen Information, Creates a Duty to Speak

The bare allegation, unsupported by a single fact, that Mr. Dorozhko stole the material, non-public information before he traded on it does not alter the unequivocal bar on basing a Rule 10b-5 claim on silence in the absence of a duty to speak. The single manner for Rule 10b-5 liability to attach for a theft of inside information is the now well-established "misappropriation" theory of insider trading liability. Misappropriation claims reach those who steal inside information in violation of a fiduciary relationship or similar relationship of trust and confidence:

> The "misappropriation theory" holds that a person commits fraud "in connection with" a securities transaction, and thereby violates §10(b) and Rule 10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information. Under this theory, a fiduciary's undisclosed, self-serving use of a principal's information to purchase and sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information.

*O'Hagan,* 521 U.S. at 652. (Citation omitted.)

The duty of loyalty and confidentiality exists independently of Rule 10b-5 and arises from the nature of the relationship between the trader and the source of the information. *O'Hagan,* 521 U.S. at 655. In *O'Hagan,* an attorney with a law firm whose client was the acquiring company traded in the securities of the target company – conduct that the Supreme Court determined was in violation of O'Hagan's duty to his firm and its client. *O'Hagan,* 521 U.S. at 665-66; *see also United States v. Cusimano,* 123 F.3d 83, 87-88 (2d Cir. 1997) (holding

7

tippee who traded on information obtained by tipper in breach of fiduciary duty to his employer liable under misappropriation theory); *United States v. Libera,* 989 F.2d 596, 601-02 (2d Cir. 1993) (holding employee of financial publication who traded securities based on information stolen from his employer liable under misappropriation theory); *SEC v. Materia,* 745 F.2d 197, 201 (2d Cir. 1984) (holding proofreader at financial document printing firm who traded based on confidential information learned about printing firm clients liable under misappropriation theory).

Put another way, the theft/misappropriation by O'Hagan did not create the duty. Similarly, the duty was not created by the fact that he executed a trade while knowingly possessing inside information. Neither of these circumstances constituted a violation of Rule 10b-5 because neither amounted to fraud. Rather, the fraud lies in the deception that is worked upon the source of the information – the person or entity to whom the duty is owed – when the trading occurs in violation of that duty. As the Court in *O'Hagan* commented:

> [D]eceptive nondisclosure is essential to the § 10(b) liability at issue. Concretely, in this case, "it [was O'Hagan's] failure to disclose his personal trading to Grand Met and Dorsey, in breach of his duty to do so, that ma[de] his conduct 'deceptive' within the meaning of [§] 10(b)."

*O'Hagan,* 521 U.S. at 660. (Alterations in original.) Deceptive non-disclosure in light of the duty owed to the source of the information is the fraud that courts have recognized to be actionable under Rule 10b-5. *See United States v. Cassese,* 273 F.Supp.2d 481 (dismissing a criminal insider trading 10b-5 count based on misappropriation theory where trader lacked duty to the source of the information), *aff'd on other grounds,* 428 F.3d 92 (2d Cir. 2005).

Here, there are no allegations that Mr. Dorozhko owed a duty to anyone. Under *O'Hagan,* the purported theft of information from IMS Health, or even its knowing possession,

cannot create a duty to abstain from trading. To conclude otherwise would be to follow the rejected position of Chief Justice Berger's dissent in *Chiarella,* which would have created a "prohibited source rule" barring all trading by anyone who improperly obtained inside information, regardless of the existence of a duty. *Chiarella,* 445 U.S. at 240-41. Courts, however, have never adopted this view, opting instead to limit the reach of Rule 10b-5's trading prohibitions to cases where an actual duty exists – either the classic duty of an insider to a corporation's shareholders, *see Chiarella,* 445 U.S. at 227-35, or the duty arising from a fiduciary (or similar) relationship that is the underpinning of the misappropriation theory. *See, e.g., Cassese,* 273 F.Supp.2d at 485 (holding that misappropriation theory turns on the existence of a fiduciary duty or similar relationship of trust and confidence). Purported theft does not create a duty to speak. Indeed, if a debt or conversion were all that were necessary to make trading on material, non-public information unlawful under Rule 10b-5, courts have surely wasted a lot of paper considering whether a duty existed in cases in which the misappropriation theory was advanced as the basis for liability.

The salient issue in this discussion is that a violation of a duty of trust and confidence for profit is what makes the trading fraudulent. Rule 10b-5 is clearly an antifraud provision. Mere possession and exploitation of material, non-public information in the absence of a duty – even under circumstances in which the information is arguably improperly obtained or the trader is otherwise acting unlawfully – is not actionable. Courts have thus limited the reach of Rule 10b-5 even where the conduct at issue is unsavory or even illegal. In this vein, *SEC v. Switzer,* 590 F.Supp 756 (W.D. Okla. 1984), and *Cassese* are instructive.

In *Switzer,* University of Oklahoma football coaching legend Barry Switzer ("Switzer") obtained a dismissal of a § 10(b) claim brought against him by the Commission for

9

trading on material, non-public information he overheard an executive tell his wife while attending a track meet. While waiting between events at the meet, Switzer sunbathed in the bleachers directly behind G. Platt ("Platt"), a high-ranking board member of Phoenix Resources Company ("Phoenix"), an oil and natural gas company. *Switzer,* 590 F. Supp. at 762. Switzer and Platt knew each other, and Switzer was aware that Platt was Phoenix's chairman. *Id.* Switzer deliberately eavesdropped on Platt as Platt told Switzer's wife that Phoenix planned to liquidate itself and that other companies were bidding on Phoenix. *Id.* Switzer, armed with this information, told several of his friends and associates. Shortly thereafter, Switzer and his tippees purchased Phoenix stock and reaped profits from the subsequent sale. *Id.* at 762-63. The Court dismissed the § 10(b) claim against Switzer, despite his deliberate eavesdropping, since Switzer did not owe any fiduciary duty to Phoenix's shareholders. *Id.* at 766. Switzer's conduct, while reprehensible, was simply beyond the reach of Rule 10b-5.

Similarly, in *Cassese,* a criminal insider trading prosecution, John J. Cassese ("Cassese"), the President of Computer Horizons Corp., learned from the Chief Executive Officer ("CEO") of a potential acquirer, Compuware, that Compuware would instead seek to acquire Data Processing Resources Corp. ("DPR") *See Cassese,* 273 F.Supp.2d at 483-84. The allegation that this information was both material and non-public was not in dispute. However, Cassese then purchased DPR stock and sold it for a large profit when the acquisition was made public. *Id.* The Court, however, granted Cassese's motion to dismiss the Rule 10b-5 insider trading count of the indictment, finding that Cassese did not owe a duty either to DPR shareholders, because he was not an insider of that company, or to the CEO of Compuware, because no relationship of trust and confidence existed between them. *Id.* at 483-87. Cassese's unbecoming conduct – misappropriating and exploiting for personal profit the information that

had been shared with him for a business purpose – was again beyond the reach of Rule 10b-5 because the trader (Cassese) owed no duty to the source of the information (the CEO of Compuware).

In the end, there is no principled distinction under well-established Rule 10b-5 precedent between Mr. Dorozhko's alleged theft and any other misappropriation where the trader was free to trade in the absence of a duty to disclose. The Commission is simply not empowered to police thefts of confidential information of the type alleged here, regardless of how superficially attractive those allegations may appear to be.

### C.    The Complaint Does Not Otherwise Adequately Plead Actionable Fraud Under Rule 10b-5

In the absence of (i) misrepresentations, lies, or half-truths or (b) actionable omissions arising out of a duty to speak, the only remaining conceivably viable theory is that the conduct alleged in the Complaint amounts to a "fraudulent device." *See SEC v. Monarch Funding Corp.,* 192 F.3d 295, 308 (2d Cir. 1999). The Complaint, however, fails to allege an actionable scheme to defraud. The allegations relating to IMS Health concern a theft enabled by "fraudulent devices, schemes, or artifices, which *may include*, but are not limited to, hacking into computer networks or otherwise improperly obtaining electronic access to systems that contained information about IMS Health's imminent earnings announcement." (Emphasis added.) The Commission does not allege that Mr. Dorozhko deceived anyone; rather, he is alleged to have taken confidential information without the consent of IMS Health. Indeed, the Commission presents no facts regarding an alleged electronic intrusion but rather simply asserts it *may* have occurred.

To support its claim that Mr. Dorozhko's conduct was deceitful, the SEC must allege that his conduct had the purpose and effect of creating a false impression or otherwise

misleading the market in general. *See Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1048

(9th Cir. 2006) (holding that violation of Section 10(b) for participation in a "scheme to defraud"

requires that the defendant have "engaged in conduct that had the principal purpose and effect of

creating a false appearance of fact in furtherance of the scheme"); *In re Parmalat Sec. Litig.,* 376

F.Supp.2d 472, 492 (S.D.N.Y. 2005) (holding that subsections (a) and (c) of Rule 10b-5 apply to

some deceptive acts as well as technical forms of market manipulation). As the Court recently

observed in *United States v. Bongiorno,* 05 Cr. 390, 2006 WL 1140864 at *7 (S.D.N.Y. May 1,

2006):

> Affording the term its proper – and fully inclusive – meaning, a
> "deceptive" act is one which "tend[s] to deceive" or "ha[s] power
> to mislead." *Webster's Third New Int'l Dictionary* at 585 … To
> deceive means "to take unawares esp[ecially] by craft or trickery
> … to deprive esp[ecially] by fraud or stealth … [or] to cause to
> believe the false …." *Webster's Third New Int'l Dictionary* at 584.
> (First ellipsis added.)

Mr. Dorozhko's alleged theft of material, non-public information from IMS

Health cannot be considered a fraudulent or deceitful act upon the market. Even taking these

bare, unsubstantiated allegations as true, any alleged theft itself was not an act designed to create

a false impression for investors or otherwise mislead the financial markets. Rather, the most that

could be said is that the purpose and effect of Mr. Dorozhko's alleged theft was to obtain

information and to generate wealth for himself. While the conduct alleged, if proven, may

constitute some other wrong, it is not actionable fraud or deceit with respect to the securities

markets, and is therefore beyond the reach of Rule 10b-5.

### D.    The Complaint Fails to Satisfy the Strict Pleading Standards of Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure mandates that "[i]n all

averments of fraud … the circumstances constituting fraud … shall be stated with a

particularity." Fed. R. Civ. P. 9(b).  Claims under § 10b of the Exchange Act sound in fraud and must therefore satisfy Rule 9(b)'s particularity requirement.  *See, e.g., In re Carter-Wallace, Inc. Sec. Litig.,* 220 F.3d 36, 39 (2d Cir. 2000); *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996); *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994); *SEC v. Terry's Tips, Inc.,* 409 F.Supp.2d 526, 533 (D.Vt. 2006); *SEC v. Penthouse Int'l, Inc.,* 390F.Supp.2d 344, 351 (S.D.N.Y. 2005).  Significantly, "Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990) ("[w]e recognize and rigorously enforce these salutary purposes of Rule 9(b)").

### 1. The Commission Fails to Plead with Particularity Any Fraudulent Act By Mr. Dorozhko

Because claims under Section 10(b) sound in fraud, Rule 9(b) of the Federal Rules mandates that "the circumstances constituting fraud ... shall be stated with ***particularity***." Fed. R. Civ. P. 9(b) (emphasis added).  Accordingly, Rule 9(b) requires that "the actual fraudulent statements [or omissions] or conduct and the fraud alleged must be stated with particularity." *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996); *Kalnit v. Eichler,* 264 F.3d 131, 136 (2d Cir. 2001).  The Commission fails to allege with the requisite degree of particularity any fraudulent misconduct attributable to Mr. Dorozhko.  Indeed, as demonstrated above, the Complaint does not even allege that Mr. Dorozhko deceived anyone or otherwise committed fraud.  Accordingly, the Complaint does not pass muster under Rule 9(b). *See, e.g., Chill,* 101 F.3d at 267.  Moreover, there is no particularity or specificity alleged with respect to the naked assertion of some imagined electronic intrusion that purportedly ***may*** have occurred.

Given this glaring inadequacy, the Commission cannot even properly aver a fraud scheme based upon the acquisition of material, non-public information.

### 2. The Commission Fails To Plead with Particularity Any Facts That Support Its Conclusory Allegations of Scienter

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally," but "relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for a "license to base claims of fraud on speculation and conclusory allegations." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks and citations omitted). See also *Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir. 1995)); *In re Carter-Wallace, Inc. Sec. Litig.,* 220 F.3d 36 (2d Cir. 2000).

Accordingly, "to serve the purpose of Rule 9(b)," plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Shields*, 25 F.3d at 1128. This "requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id; see also Kalnit v. Eichler*, 264 F.3d at 138-39 (citations omitted); *Chill,* 101 F.3d at 267; *SEC v. Ballesteros Franco,* 253 F.Supp.2d 720, 731 (S.D.N.Y. 2003) ("Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent").

Here, the Commission does not allege a single fact that supports Mr. Dorozhko's alleged unlawful scienter. Instead, the Complaint contains a conclusory allegation that "Dorozhko gained access to material nonpublic information regarding IMS Health's third quarter earnings in advance of [its] announcement on October 17, 2007." Such access *may* have included "hacking into computer networks or otherwise improperly obtaining electronic access

14

to systems that contained information about IMS Health's imminent earnings announcement."

*See* Compl. ¶ 3. Such a "formulaic pleading technique has been regularly rejected by the Second

Circuit" as insufficient to plead scienter. *Leventhal v. Tow,* 48 F.Supp.2d 104, 113 (D. Conn.

1999) (citing *Shields,* 25 F.3d at 1129 (holding that boilerplate allegations that defendants "knew

or recklessly disregarded" that their statements were misleading are "so broad and conclusory as

to be meaningless")); *see also San Leandro Emergency Med. Group Profit Sharing Plan v.

Philip Morris Cos., Inc.,* 75 F.3d 801, 812 (2d Cir. 1996).   In the absence of particularized

factual allegations demonstrating conscious misbehavior or recklessness by Mr. Dorozhko, the

Commission's Section 10(b) claim must be dismissed.

## II.    THE COURT SHOULD VACATE THE TEMPORARY RESTRAINING ORDER AND LIFT THE ASSET FREEZE

### A.    The Commission Is Not Entitled to a Preliminary Injunction

To obtain the injunctive relief it seeks, "the SEC must make a 'clear showing' of

both (1) the likelihood of success by establishing a prima facie case of a past violation of the

securities laws, and (2) a 'reasonable likelihood' of future violations absent the injunction." *SEC

v. Gonzalez de Castilla,* 145 F.Supp.2d 402, 414 (S.D.N.Y. 2001)*; SEC v. Unifund SAL,* 910

F.2d 1028, 1037 (2d Cir. 1990). As demonstrated below, the Commission cannot make a "clear

showing" of either element.

#### 1.    The Commission's Theory Is Fatally Flawed

As argued above, Mr. Dorozhko's alleged theft of information from IMS Health

and subsequent trading activity is beyond the reach of Rule 10b-5. Moreover, the Commission's

failure to allege adequately a scheme to defraud beyond the bare allegation of theft makes this

case untenable. For these reasons, the Commission has failed to establish a prima facie case of a

past violation and has shown no likelihood of success.

Were the Court to permit this case to proceed, the Court should nonetheless vacate the Temporary Restraining Order because the Commission's novel theory of fraud liability is not likely to succeed given the weight of authority showing that the allegations of the Complaint simply do not amount to fraud. No court has found a theft of inside information actionable in the absence of a duty to disclose. Nor has the Commission alleged either facts sufficient or a theory appropriate to sustain a fraud case. The extraordinary relief granted against Mr. Dorozhko is completely unwarranted under these circumstances.

### 2.    The Commission's Materiality Allegations Are Speculative

As a separate matter, the Commission cannot demonstrate a substantial likelihood of success on the merits because it has not shown that the information allegedly obtained by Mr. Dorozhko was material, which is an essential element of its claim. For purposes of Section 10(b), information is material if there is a "substantial likelihood that a reasonable investor would view it as significantly altering the 'total mix' of information available." *United States v. Cusimano,* 123 F.3d 83, 88 (2d Cir. 1997) (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). "This inquiry is guided both by the probability that an event will occur and the anticipated magnitude of the event relative to the totality of the company's activity." *Cusimano,* 123 F.3d at 88.

The Commission's allegation that the information Mr. Dorozhko purportedly stole was material is vague and speculative. Indeed, the Complaint simply assumes that the purportedly stolen information must have been about poor earnings, but never actually alleges precisely what information was actually appropriated. In defending himself, Mr. Dorozhko is guided only by the conclusory and completely speculative allegations that he *may have* hacked into IMS Health's computer system, *see* Compl. ¶ 3, and that IMS Health conducted an internal

16

investigation into his "suspicious trading" activities. *See* Plaintiff Securities and Exchange Commission's Memorandum of Law in Support of Emergency Application for a Temporary Restraining Order, an Order Freezing Assets and Granting Other Relief, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue ("SEC Brief") at p. 5. The Commission makes a giant leap in assuming that Mr. Dorozhko supposedly saw IMS Health's earnings release prior to placing his trades.

With respect to the so-called "suspicious" trades, it is quite clear that the Commission has no idea what exactly Mr. Dorozhko allegedly saw or whether that information was even material. On this central issue of the case, all we have is guesswork, on which no conclusion can be based that the Commission will ever be able to prove materiality.

### 3.    There Is No Likelihood of Future Violations

Finally, the Temporary Restraining Order should be vacated because the Commission has failed to prove the second element necessary to obtain the injunctive relief it seeks – "a 'reasonable likelihood' of future violations absent the injunction." *Gonzalez de Castilla,* 145 F.Supp2d. at 414 (citing *Unifund SAL,* 910 F.2d at 1037). Indeed, the Commission itself alleges that this was a single trade and not a pattern. Every fact alleged is consistent with a single, dumb-luck, "hail Mary" trade. The Commission does not allege a single fact to support its contention that Mr. Dorozhko poses any risk whatsoever of committing future violations.

### B.    The Asset Freeze Should Be Lifted

For all of the same reasons set forth above (*see* Point II.A), the asset freeze should also be lifted. To uphold the asset freeze, the Commission must show "that it is likely to succeed on the merits." *See SEC v. Cavanagh,* 155 F.3d 129, 132 (2d Cir. 1998). As detailed above, however, the Commission has very little chance of doing so.

Moreover, the Court, in the Temporary Restraining Order, directed that Mr. Dorozhko, among other things, hold and retain within his control a sum equal to the amount of his alleged ill-gotten gains plus an amount equal to three times the amount of the alleged ill-gotten gains for possible civil penalties. However, requiring Mr. Dorozhko to "hold and retain within his control" approximately $1.2 million is unwarranted.

The Commission claims the trades that Mr. Dorozhko made based on the information he purportedly stole from IMS Health earned him $280,000 in profits. *See* Compl. ¶ 2. Even assuming the Commission is "likely to succeed on the merits," thus warranting the maintenance of the asset freeze, requiring Mr. Dorozhko to come up with an additional $840,000 (representing three times the purported ill-gotten gains) is unjust and unfair, and does not comport with the relevant statute, 15 U.S.C. § 78u-1(a)(2).

Courts have held that "[d]isgorgement of illicit profits is a proper equitable remedy for securities fraud." *SEC v. Pittsford Capital Income Partners,* 06 Cv 6353, 2007 WL 2455124 at *16 (W.D.N.Y. 2007). Moreover, "[r]ather than being punitive in nature, 'the primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws.'" *Id.* (citation omitted). However, the Commission has not stopped at seeking disgorgement and instead wants Mr. Dorozhko to maintain a large sum of money – an additional $840,000 – for supposed civil penalties. Under the facts and circumstances of this case, such an amount is unwarranted.

Upon information and belief, this is the first time that Mr. Dorozhko has come under the SEC's radar. Additionally, the circumstances surrounding his alleged theft are vague at best. Finally, there are no allegations that Mr. Dorozhko is a trained securities professional

18

who repeatedly made materially false and misleading statements or omissions to outside investors. *Id.* at *17. In short, the maintenance of additional funds is not warranted under the facts and circumstances of this case.

## III.   THIS COURT LACKS PERSONAL JURISDICTION OVER MR. DOROZHKO

"The Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment." *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 998 (2d Cir. 1975); *see also Unifund SAL,* 910 F.2d at 1033. The due process analysis has two prongs: the "minimum contacts" prong and the "reasonableness" prong. Due process permits the exercise of personal jurisdiction over a defendant if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[1] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). Put another way, to properly exercise personal jurisdiction over Mr. Dorozhko, the Court must find that he "purposefully avail[ed] [him]self of the privilege of conducting activities within [the United States], thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)

The Complaint falls far short of establishing the minimum contacts sufficient to exercise personal jurisdiction over Mr. Dorozhko. The Commission admits that Mr. Dorozhko is a Ukrainian citizen who lives and works in Ukraine. *See* Compl. ¶ 8. Further, all of the misconduct alleged in the Complaint is alleged to have occurred in Ukraine or in the London branch of Interactive Brokers. The only contact with the United States alleged in the Complaint is that Mr. Dorozhko sold securities of a United States company on a United States stock

---

[1] Because this action involves a federal question, the contacts are measured as to the United States. *See Chew v. Dietrich,* 143 F.3d 24, 28 n.4 (2d Cir. 1998); *In re Tamoxifen Citrate Antitrust Litig.,* 262 F.Supp.2d 17, 24 (E.D.N.Y. 2003).

exchange. That alone is insufficient to establish personal jurisdiction. *See SEC v. Alexander,* 00 Civ. 7290, 2003 WL 21196852 at *2 (S.D.N.Y. May 20, 2003); *SEC v. Alexander,* 160 F.Supp.2d 642, 655-56 (S.D.N.Y. 2001).

Likewise, the Commission falls far short of establishing the second prong of the due process analysis, "reasonableness." *See supra.* "The Supreme Court has held that the court must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996) (*citing Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County,* 480 U.S. 102, 113-14 (1987)).

None of those factors is implicated here. As an initial matter, it would be a significant burden on Mr. Dorozhko to litigate in this forum. To appear for trial, Mr. Dorozhko would have to travel thousands of miles, at significant personal and professional expense. Further, this Court has no interest in adjudicating this case. As demonstrated above, Mr. Dorozhko has no contacts with the United States. Indeed, the Commission admits in the Complaint that Mr. Dorozhko is in the Ukraine and that the speculatively alleged computer hacking presumably occurred there. *See, e.g.,* Compl. ¶ 3. This court lacks sufficient interest in adjudicating claims against a citizen of a foreign country who allegedly committed acts in that country, and whose future misconduct the Commission seeks to deter will necessarily occur in that country. In circumstances such as these, the foreign country has a greater interest in the litigation. *See SEC v. Softpoint, Inc.,* 95 Civ. 2951, 2001 WL 43611, at *6 (S.D.N.Y. Jan. 18,

2001); *see also Metro. Life Ins. Co.,* 84 F.3d at 572.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice, and the Temporary Restraining Order, An Order Freezing Assets and Granting Other Relief, the should be vacated.

Dated: New York, New York
   November 6, 2007

          Respectfully submitted,

          CHARLES A. ROSS & ASSOCIATES, LLC

By:   *Charles A. Ross*

          Charles A. Ross (CR-1331)
          Christopher L. Padurano (CP-2587)
          Trinity Centre
          111 Broadway, Suite 1401
          New York, New York 10006
          (212) 616-3030

          Attorneys for Defendant Oleksandr Dorozhko

TO:  Carl A. Tibbetts
    Assistant Chief Litigation Counsel
    U.S. Securities and Exchange Commission
    100 F Street, N.W.
    Washington, D.C. 20549-4030

    Robert B. Blackburn
    Local Counsel
    U.S. Securities and Exchange Commission
    3 World Financial Center, Room 4300
    New York, New York 10281-1022

## CERTIFICATE OF SERVICE

I certify that on November 6, 2007, I caused a copy of the Memorandum of Law in Support of Oleksandr Dorozhko's Motion to Dismiss the Complaint and to Vacate the Temporary Restraining Order, An Order Freezing Assets and Granting Other Relief, to be served via the Electronic Court Filing system and by electronic mail on:

> Carl A. Tibbetts
> Assistant Chief Litigation Counsel
> U.S. Securities and Exchange Commission
> 100 F Street, N.W.
> Washington, D.C. 20549-4030
>
> Robert B. Blackburn
> Local Counsel
> U.S. Securities and Exchange Commission
> 3 World Financial Center, Room 4300
> New York, New York 10281-1022

> _Christopher L. Padurano_
> Christopher L. Padurano