# EXHIBIT I



AMY J. GREER
KINGDON KASE
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
701 Market Street
Suite 2000
Philadelphia, PA  19103
Telephone: (215) 597-3100
Telefax: (215) 597-2740

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE SWEET**

**05 CV 9259**

———————————————————————

SECURITIES AND EXCHANGE COMMISSION,    :

                  Plaintiff,    :

                  v.    :    Civil Action No.

LOHMUS HAAVEL & VIISEMANN,    :
OLIVER PEEK, and    :
KRISTJAN LEPIK    :

               Defendants.    :

———————————————————————

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY

1.     This matter involves an on-going fraudulent scheme conducted by Lohmus Haavel & Viisemann ("LHV"), an investment banking firm located in Tallinn, Estonia, and two of its employees, Oliver Peek ("Peek") and Kristjan Lepik ("Lepik") during the period January 2005 through the present time.

2.      In connection with more than 360 confidential press releases issued by more than 200 U. S. public companies, defendants LHV, Peek, and Lepik, through a series of fraudulent acts, repeatedly have electronically stolen material non-public information from a secure website for the purpose of executing hundreds of securities trades based on that information, successfully making at least $7.8 million in the process.

3.      To effect their fraudulent scheme, LHV, Peek, and Lepik obtained client access, in the name of LHV, to a secure website that is operated by Business Wire, Inc. ("Business Wire") for the purpose of permitting Business Wire clients to submit news releases for dissemination to the public.

4.      Then, using that access, LHV, Peek, and Lepik have unleashed on that website a type of computer program called a "spider" that systematically retrieves sensitive, secure, password-protected information about client press releases scheduled for public dissemination by Business Wire.

5.      With the non-public information in hand, LHV, Peek, and Lepik trade ahead of the public dissemination of that information and, again, after the news is made public, almost always realizing a profit.  Defendants have logged onto the secure website and electronically stolen information about confidential news releases as recently as October 28, 2005.

6.      The investigation into this matter is on-going and it is believed and, therefore, averred that LHV, Peek, and Lepik have engaged in conduct substantially similar to that described herein, as it relates to Business Wire and to the particular identified trading accounts, in connection with other wire services and using these and other trading accounts.

7.      By knowingly or recklessly engaging in the conduct described in this Complaint, defendants LHV, Peek, and Lepik violated, and unless restrained and enjoined will continue

2

to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15

U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10b5], thereunder.

8.      The Commission brings this action seeking to preliminarily and permanently enjoin

the defendants from engaging in the wrongful conduct alleged herein.  The Commission also

seeks a final judgment ordering the defendants to disgorge any ill-gotten gains and to pay

prejudgment interest thereon, and ordering the defendants to pay civil money penalties.

## JURISDICTION AND VENUE

9.      The Commission brings this action pursuant to Sections 21(d) and (e) of the

Exchange Act [15 U.S.C. §§ 78u(d) and (e)], to enjoin such acts, practices, and courses of

business; obtain disgorgement and civil penalties; and for other appropriate relief.

10.     This Court has jurisdiction over this action pursuant to Section 27 of the Exchange

Act [15 U.S.C. § 78aa].

11.     Certain of the acts, practices, and courses of business constituting the violations

alleged herein occurred within the Southern District of New York and elsewhere, and were

effected, directly or indirectly, by making use of the means and instrumentalities of

interstate commerce, or the mails, or the facilities of a national securities exchange.

## DEFENDANTS

12.     Lohmus Haavel & Viisemann, headquartered in Tallinn, Estonia, is an investment

bank established in 1999.  LHV, which also has offices in Latvia and Lithuania, provides

corporate financing, private equity, asset management, investment services, and structured

financing services to the Eastern European market.

13.    Oliver Peek, age 24, is a citizen of Estonia currently residing in Tallinn.  Peek is

employed by LHV and works for its investment services team.  His trading records indicate

that he is also a day trader, and appears to have a background in computer programming.

14.    Kristjan Lepik, age 28, is a citizen of Estonia currently residing in Tallinn.  Lepik is

a partner at LHV and the head of LHV's trading department.

## FACTS

### Unusual Trading Ahead of a Merger Announcement

15.    During the Summer of 2005, the Commission investigated higher than normal

trading volume in a stock immediately prior to a merger announcement.  The merger was

announced immediately after the markets closed on June 23, 2005 and trading for that date,

of approximately 650,000 shares, was about 160% higher than the average daily trading

volume for this security during the prior six months, which was approximately 250,000

shares.

16.    Trading information in the security for that date from CyberTrader, an on-line

broker located in the U.S., revealed an account that had purchased 105,000 shares on June

23, 2005, prior to the merger announcement and had sold those shares immediately

following the merger announcement, realizing approximately $111,000 from that trading.

This CyberTrader account was entitled: [redacted – the account title is a derivation of Oliver

Peek's name], and had a mailing address in Estonia (the "Peek Account").

17.    Information from another U.S. on-line broker-dealer, Interactive Brokers LLC

("Interactive Brokers"), revealed additional Estonian accounts, trading in the same security

in the same way – buying before the merger announcement and selling after the

announcement.  These accounts were in the name of LHV and Lepik Trading.

4

18.    In total, the three identified Estonian accounts, held at two different broker-dealers, CyberTrader and Interactive Brokers, in the names of Peek, LHV, and Lepik Trading, bought, using their on-line accounts, about 46% of the approximately 650,000 share trading volume on June 23, 2005. All three of these accounts sold the security, using their on-line accounts, shortly after the merger announcement, realizing a total profit of about $300,000.

19.    Two additional LHV accounts were identified from information provided by CyberTrader and Interactive Brokers, for a total of five accounts related, in some way, to LHV. (The Peek Account, the Lepik Trading Account, and the three LHV Accounts will be hereinafter referenced as the "LHV related accounts.")

20.    In each of these accounts, all of the securities transactions were effected electronically, using the internet and the on-line accounts with the two broker-dealers. In addition, all of the transfers of money were effected by way of electronic funds transfers.

21.    A number of IP addresses were identified based on e-mail correspondence sent by Lepik to Interactive Brokers, including the exact IP address for a computer that Lepik had used to send e-mails.

22.    An IP address individually identifies a computer and can provide information about its geographic location. All of the identified IP addresses were determined to be in Tallinn, Estonia, where LHV, Lepik, and Peek all are located.

### Defendants' Are Trading Ahead of Non-Public Information Electronically Stolen From Business Wire In Violation of the Securities Laws.

23.    Business Wire, a leading commercial disseminator of news releases and regulatory filings for corporations and groups throughout the world, uses a proprietary, web-based, press release submission system called "Business Wire Connect," available only to Business Wire clients.

24.     When a Business Wire client wants to publicly disseminate a news release, it sends the release, in the form of a computerized file, to Business Wire by logging on to the Business Wire Connect site.  Releases are designated, by the clients, for release by Business Wire either ASAP (as soon as possible) or at a specified time.

25.     Once received, Business Wire edits and proofreads the release.  When a news release is sent by a client, it enters the editing queue, where it awaits editing and proofreading by a Business Wire copy editor.  Once the copy editor finishes with the release, it is lined up for public dissemination, either immediately or at its designated time.

26.     The process, from entry onto the Business Wire system, through the editing queue, and until public dissemination, takes at least 15 minutes per page, sometimes longer.  If the news release has a designated date and time for dissemination, it will wait on the Business Wire system until that date and time, which may even be days away.  Upon public dissemination from Business Wire, the news release will be sent to all designated media destinations at one time.

27.     On October 28, 2005, Business Wire reported they had found that one IP address appears repeatedly in their web logs for the Business Wire Connect system.

28.     The web logs are the record of the electronic "foot prints" that are left each time a computer accesses a particular website.  Business Wire generally keeps these web log records for only a few weeks.

29.     The full IP address identified by Business Wire matches exactly the IP address for a Business Wire client – LHV.

30.     In connection with the over 360 press releases in over 200 companies identified to-date, defendants initiated trading in the LHV related accounts only after the press releases

were actually received by Business Wire from its clients. In some cases, trading in one or more of the LHV related accounts has occurred as quickly as within five minutes of Business Wire's receipt of the press release from its client.

31.     In order to gain access to the Business Wire Connect system, and as part of the defendants' fraudulent scheme, LHV opened a Business Wire client account in June 2004. From June 2004 to the present time, however, LHV has never once actually issued a press release. Peek is one of only two registered users, meaning that he is authorized to submit press releases on behalf of LHV.

32.     After gaining access to the Business Wire Connect system in the guise of a client, LHV, Peek and/or Lepik utilize a "spider" program to infiltrate otherwise secure information on that website.

33.     After LHV logs on, as a registered client of Business Wire, this spider program accesses the Business Wire Connect website and systematically goes through its underlying contents, finding and retrieving information.

34.     The Business Wire Connect web logs reveal that LHV, Peek and/or Lepik are logging onto that site, from the same IP address and using LHV's Business Wire account, every couple of hours, for the sole purpose of running their spider program from the computer in Tallinn, Estonia.

35.     Each time this contact is initiated, the spider program retrieves sensitive, secure, password-protected information about client press releases scheduled for public dissemination by Business Wire and sends it to the defendants' computer in Tallinn, Estonia.

36.   The information obtained by the spider program includes information about the identity of the publicly traded issuer, some information about the purpose and substance of the release, the scheduled time of public dissemination by Business Wire, and the distribution routing instructions requested by the issuer.

37.   The information being retrieved by the spider program is non-public and highly sensitive. Business Wire does not make this information available to anyone, including other clients, until the news release is disseminated to the public.

38.   However, the defendants' spider program efficiently breaches the security measures in place, systematically viewing these underlying files on the Business Wire Connect website, and sending the information back to the defendants. Upon receipt of that information, defendants fully realize their fraudulent scheme by trading on that information, ahead of its public dissemination, and realizing millions of dollars in profits.

39.   The web logs reveal that the spider program cycles through the underlying contents of the Business Wire Connect web page at such a rapid-fire and systematic pace that it can only be a specialized, automated program, since it would be extremely unlikely that a person could accomplish the same result manually.

40.   As of October 28, 2005, Business Wire had taken a sampling of about 10 press releases it had disseminated and in which there was trading by the LHV related accounts, and confirmed that the spider program had retrieved confidential information about each of those news releases in the manner described above.

**Defendants Make Millions Through Their Fraudulent Scheme.**

41.     The Peek account information reveals that defendants executed hundreds of these profitable short-term trades.  The account was opened in August 2003, with approximately $29,000 electronically transferred to CyberTrader from a UNIBANKA bank account in Riga, Latvia.  As of the end of September 2005, on trading profits alone, the Peek Account was worth in excess of $2 million, with no additional funds having been deposited and at least $77,600 having been withdrawn, again by electronic transfer to Riga, Latvia.

42.     The other four LHV related accounts, all at Interactive Brokers, all evidence similar substantial increases in value based upon trading success, much of which trading lines up with the patterns in the Peek account.

43.     Specifically, in regard to those Interactive Brokers accounts, LHV account [redacted]84, which appears to have been opened in late 2004, showed a balance of $65,478.72 at the end of January 2005.  However, by the end of September 2005, the balance was over $3 million, after additions to the account during this period totaling about $471,000 and withdrawals from the account totaling over $475,000.  On information and belief, withdrawals from this account were sent, by electronic transfer, to Hansapank, a bank that is located throughout the Baltics, including Tallinn, Estonia

44.     LHV account [redacted]59 was opened in January 2005 with just $3,756.  By the end of September 2005, the balance was over $38,000, after additions and withdrawals each under $100.  On information and belief, withdrawals from this account also were sent, by electronic transfer, to Hansapank.

45.     LHV account [redacted]57 was opened in April 2005, with deposits totaling $2,055,888.17.  By the end of September 2005, the balance was over $8.3 million, after

9

additions to the account during this totaling less than $200,000 and withdrawals from the account totaling about $110,000. On information and belief, withdrawals from this account also were sent, by electronic transfer, to Hansapank.

46.     Finally, the Lepik Trading account was opened at the end of April 2005 with a deposit of $32,170.89. By the end of September 2005, the balance was seemingly moderate at about $70,000, but that was after no additions to the account during this period and withdrawals in excess of $200,000. These withdrawals were effected by electronic transfers to accounts located at a Hansapank branch in Tallinn, Estonia, and a Nordea Bank Finland branch, also located in Tallinn.

### LHV Related Accounts Initiate Trading, Often In Concert, Shortly Before the Release of Company News, Almost Always Profiting.

47.     During the period January 2005 through the present, defendants' traded in the Peek account in over 200 U.S. public companies, in direct relation to over 360 press releases that were publicly disseminated through Business Wire, and in many, many cases defendants' trading in the other LHV related accounts follow the same trading pattern as the Peek account. In fact, the identified LHV related accounts often traded in concert, minutes or seconds apart.

48.     Defendants' trading in these companies, specifically related to news releases, is frequently the only transactions in these securities in the LHV related accounts.

49.     In connection with the over 360 press releases, all of the identified trading is initiated in advance of public dissemination of the news release, appears intended to profit from the news contained in the release, and, in fact, the defendants profited from the vast majority of these trades. Specifically, if the release appears to contain positive news, the

trade reflects a buy of the security and/or a buy of a call option; if the news appears

negative, the trade reflects a short sale of the security and/or buy of a put option.

50.    Defendants hold securities in the LHV related accounts for only a very short

duration.  In any event, the trading in the particular security is generally concluded within

two business days.

51.    When the markets are closed, defendants take advantage of after hours trading using

ECNs, electronic crossing networks, rather than waiting until the next trading day.

52.    The public companies in which the defendants have traded are all listed on either the

New York Stock Exchange, the American Stock Exchange or the NASDAQ, all of which

are headquartered in New York City.

53.    By way of example, an analysis of trading activity in the LHV related accounts in

the securities of 45 different companies during the period April 2005 through September

2005 is attached hereto as Exhibit 1.  For each one of these public companies that issued

news, this trading analysis shows the company name, which of the LHV related account(s)

traded in that company's securities, the date and time of those trades, the date and time the

news release was disseminated, the title of the news release, and the securities traded.

54.    Defendants' profits from this trading activity exceed $7.8 million, with the Peek

account realizing at least $600,000 in profits, the Lepik Trading account realizing at least

$200,000 in profits, and the three LHV accounts combined realizing at least $7 million in

profits.

55.    It is believed and, therefore, averred that LHV, Peek, and Lepik have engaged in

conduct substantially similar to that described herein, as it relates to Business Wire and to

the particular identified trading accounts, in connection with other news wire services and using these and other trading accounts. The investigation into this matter is on-going.

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

### Against All Defendants

56.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 55, inclusive, as if the same were fully set forth herein.

57.     From at least January 1, 2005 and continuing through the present time, LHV, Peek, and Lepik knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentality of interstate commerce or of the mails, or a facility of a national securities exchange:

    (a)     employed devices, schemes or artifices to defraud;

    (b)     made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    (c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

58.     By engaging in the foregoing conduct, LHV, Peek, and Lepik violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10b5], thereunder.

12

**WHEREFORE**, the Commission respectfully requests that this Court:

## I.

Permanently restrain and enjoin defendants LHV, Peek, and Lepik, and their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them, directly or indirectly, singly or in concert, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10b5], thereunder.

## II.

Order defendants LHV, Peek, and Lepik to account for and to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint, in accordance with a plan of disgorgement acceptable to the Court and to the Commission.

## III.

Order defendants LHV, Peek, and Lepik to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C.§ 78u(d)(3)], in an amount to be determined by the Court.

## IV.

Grant such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

Daniel M. Hawke
Amy J. Greer
David S. Horowitz
Kingdon Kase
Tami S. Stark – TS8321
Deborah E. Siegel
Jennifer E. Langlois

Attorneys for Plaintiff

**SECURITIES AND EXCHANGE
COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

Dated: November _1_, 2005

14

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-8-05

AMY J. GREER
KINGDON KASE
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Philadelphia District Office
701 Market Street
Suite 2000
Philadelphia, PA  19103
Telephone: (215) 597-3100
Telefax: (215) 597-2740


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

              v.

LOHMUS HAAVEL & VIISEMANN,
OLIVER PEEK, and
KRISTJAN LEPIK

              Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.
05 CV 9259

(Judge Sweet)

---

## ORDER OF PRELIMINARY INJUNCTION, FREEZE OF ASSETS AND OTHER RELIEF AS TO DEFENDANTS KRISTJAN LEPIK AND OLIVER PEEK

      The Court having considered (i) the Complaint filed in this action by plaintiff

Securities and Exchange Commission ("Commission"), (ii) the Commission's

Application for a Temporary Restraining Order, Preliminary Injunction, and Order

Freezing Assets and Granting Other Relief ("Commission's Application"), (iii) the

memorandum of law filed in support of the Commission's Application, (iv) the

Declaration of John S. Rymas and the exhibits thereto, and (v) other evidence presented

to the Court by the Commission; and

M I C R O F I L M

NOV - 8 2005

-3:48 PM

The Court having found that defendants Kristjan Lepik ("Lepik") and Oliver Peek ("Peek") received adequate notice of the Order to Show Cause, Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief entered by this Court on Tuesday, November 1, 2005 ("Order to Show Cause"), and Lepik and Peek having failed to appear at the hearing scheduled in the Order to Show Cause,

**NOW THEREFORE,**

### I.

**IT IS HEREBY ORDERED** that until further order of this Court

(a)     Defendants Lepik and Peek and their officers, directors, subsidiaries, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order of Preliminary Injunction, Freeze of Assets and Other Relief as to defendants Lepik and Peek ("Order of Preliminary Injunction") by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever, by themselves or any person or entity under their direct or indirect control, any funds or other assets presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such funds or other assets may presently exist and wherever located; and

(b)     any bank, savings and loan, mutual fund, or other financial or brokerage institution (including, without limitation, Interactive Brokers, LLC, CyberTrader, RML Trading, Hansapank, UNIBANKA, and Nordea Bank) or other person or entity located within the territorial jurisdiction of the United States courts that holds any funds, accounts

2

or other assets located within the territorial jurisdiction of the United States courts in the

name, for the benefit or under the control of defendants Lepik and Peek, or for which

defendants Lepik and Peek, or either of them, are signatories or have signing authority,

and receives actual notice of this Order of Preliminary Injunction by personal service or

otherwise, shall

    (i)    hold and retain within its control and prohibit the withdrawal, removal,

            transfer or other disposal of any funds or other assets in such accounts, and

    (ii)   **within three business days** of receipt of that notice, serve on counsel for

            the Commission a statement setting forth, with respect to each such

            account or other asset, the balance in the account or description of the

            assets as of the close of business on the date of receipt of the notice.

            Service of such statement on counsel for the Commission shall be by

            express courier service or telefax directed to Kingdon Kase, Esquire, at the

            Securities and Exchange Commission, 701 Market Street, Suite 2000,

            Philadelphia, PA 19106 (telephone no. 215-597-0794), or at telefax

            number (215) 597-2740.

## II.

**IT IS FURTHER ORDERED** that, until further order of this Court, defendants

Lepik and Peek, their agents, officers, servants, employees, and attorneys, and those

persons in active concert or in participation with them who receive actual notice of this

Order of Preliminary Injunction by personal service or otherwise, are preliminarily

enjoined from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule

10b-5 thereunder, 17 C.F.R. § 240.10b-5, directly or indirectly, by using any means or

instrumentality of interstate commerce, or of the mails, or of any facility of any national

securities exchange, to:

(a)    employ any device, scheme, or artifice to defraud,

(b)    make any untrue statement of a material fact or omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under

which they were made, not misleading, or

(c)    engage in any act, practice, or course of business which operates or would operate

as a fraud or deceit upon any person, in connection with the purchase or sale of any

security.

### III.

**IT IS FURTHER ORDERED** that

(a)    Defendants Lepik and Peek, their agents, officers, servants, employees, and

attorneys shall cooperate with the Commission in identifying, locating, marshalling, and

preserving all of the assets of defendants Lepik and Peek;

(b)    within three business days of the entry of this Order of Preliminary Injunction,

defendants Lepik and Peek shall each serve on counsel for the Commission a statement

identifying each account or other asset located within the territorial jurisdiction of the

United States courts that holds any funds, accounts or other assets in their name, for their

benefit or under their control, jointly or severally, or for which defendants Lepik and

Peek, or either of them, are signatories or have signing authority; and

(c)    the statement provided pursuant to paragraph III.(b) shall set forth, with respect to

each such account or other asset, the identity and location of the bank, savings and loan,

mutual fund, financial or brokerage institution, or other person or entity holding such

funds or assets, and the balance in the account or description of the assets as of the close

of business as of the date of this Order of Preliminary Injunction.

## IV.

**IT IS FURTHER ORDERED** that defendants Lepik and Peek and all persons or

entities acting at their direction or on their behalf are hereby enjoined and restrained from

destroying, altering, concealing, or otherwise interfering with the Commission's access to,

any and all documents, books, and records in the possession, custody, or control of

defendants Lepik and Peek, their agents, officers, employees, servants, accountants,

financial or brokerage institutions, or attorneys relating to the assets of defendants Lepik

and Peek or to the allegations of the Complaint.

## V.

**IT IS FURTHER ORDERED** that defendant Lepik shall, within five business

days of the date of this Order of Preliminary Injunction:

(a)     take such steps as are necessary to repatriate to the territory of the United States

all funds and assets that previously have been transferred overseas from his accounts in

the United States, as described in the Commission's Complaint, or transferred subsequent

to the entry of the asset freeze included in the Order to Show Cause, including 156,499

Euros withdrawn on November 1, 2005 from account [REDACTED ***-22] held at

Interactive Brokers LLC in the name of Valparaiso Invest, which are held by him or are

under his direct or indirect control, and to deposit such funds into the Registry of this

Court; and

(b)     provide the Commission and the Court with an accounting of the funds and assets

so repatriated.

## VI.

**IT IS FURTHER ORDERED** that defendant Peek shall, within five business days of the date of this Order of Preliminary Injunction:

(c)      take such steps as are necessary to repatriate to the territory of the United States all funds and assets that previously have been transferred overseas from his accounts in the United States, as described in the Commission's Complaint, which are held by him or are under his direct or indirect control, and to deposit such funds into the Registry of this Court; and

(d)      provide the Commission and the Court with an accounting of the funds and assets so repatriated.

## VII.

**IT IS FURTHER ORDERED** that a hearing concerning the allegations in the Commission's Complaint shall be held beginning at _9 30_ o'clock _AM_, on the _23_ day of _November_ 2005 in Room _15C_ of the United States Courthouse, _500 Pearl St_ New York, N.Y. 10007.  All parties shall file with this Court pre-trial briefs not later than _5_ o'clock on _21 Nov_, 200_.

## VIII.

**IT IS FURTHER ORDERED** that, pending the hearing to be held pursuant to paragraph VI above, any party to this action may, at any time, upon five business days

notice to the other parties to this action, apply to this Court to modify any provision of

this Order of Preliminary Injunction.


_11-8-09_
**DATE**                    ROBERT W. SWEET, J.

7

AMY J. GREER
KINGDON KASE
TAMI S. STARK (TS-8321)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Philadelphia District Office
701 Market Street
Suite 2000
Philadelphia, PA 19103
Telephone: (215) 597-3100
Telefax: (215) 597-2740

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11-8-05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,            :

                              Plaintiff,       :
                                               :
                    v.                         :        Civil Action No.
                                               :          05 CV 9259
LOHMUS HAAVEL & VIISEMANN,                     :
OLIVER PEEK, and                               :        (Judge Sweet)
KRISTJAN LEPIK                                 :
                                               :
                              Defendants.      :

---

**ORDER OF PRELIMINARY INJUNCTION, FREEZE OF ASSETS AND OTHER RELIEF AS TO DEFENDANT LOHMUS HAAVEL & VIISEMANN**

Plaintiff Securities and Exchange Commission ("Commission") having filed a

Complaint, and defendant Lohmus Haavel & Viisemann ("LHV") having entered a

general appearance; consented to the Court's jurisdiction over it and the subject matter of

this action; consented to entry of this Order of Preliminary Injunction, Freeze of Assets

and Other Relief ("Order of Preliminary Injunction") without admitting or denying the

allegations of the Complaint (except as to jurisdiction); waived findings of fact and

MICROFILM
NOV - 8 2005
-3 58 PM

conclusions of law; and waived any right to appeal from this Order of Preliminary Injunction;

**NOW THEREFORE,**

## I.

**IT IS HEREBY ORDERED** that until further order of this Court

(a)     Defendant LHV and its officers, directors, subsidiaries, agents, servants, employees, attorneys, successors-in-interest, and those persons in active concert or participation with them who receive actual notice of this Order of Preliminary Injunction by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever, by themselves or any person or entity under their direct or indirect control, any funds or other assets presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such funds or other assets may presently exist and wherever located, provided that nothing in this paragraph shall limit the ability of LHV to conduct business in the normal course and, in connection therewith, to utilize any funds or assets not subject to the provisions of paragraph I.(b) below; and

(b)     any bank, savings and loan, mutual fund, or other financial or brokerage institution (including, without limitation, Interactive Brokers, LLC, CyberTrader, RML Trading, Hansapank, UNIBANKA, and Nordea Bank) or other person or entity located within the territorial jurisdiction of the United States courts that holds any funds, accounts or other assets located within the territorial jurisdiction of the United States courts in the name, for the benefit or under the control of LHV, or for which LHV is a signatory or has

signing authority, and receives actual notice of this Order of Preliminary Injunction by personal service or otherwise, shall

    (i)    hold and retain within its control and prohibit the withdrawal, removal, transfer or other disposal of any funds or other assets in such accounts, and

    (ii)    **within three business days** of receipt of that notice, serve on counsel for the Commission a statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice. Service of such statement on counsel for the Commission shall be by express courier service or telefax directed to Kingdon Kase, Esquire, at the Securities and Exchange Commission, 701 Market Street, Suite 2000, Philadelphia, PA 19106 (telephone no. 215-597-0794), or at telefax number (215) 597-2740.

## II.

**IT IS FURTHER ORDERED** that, until further order of this Court, defendant LHV, its agents, officers, servants, employees, and attorneys, and those persons in active concert or in participation with them who receive actual notice of this Order of Preliminary Injunction by personal service or otherwise, are preliminarily enjoined from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, directly or indirectly, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, to:

(a)    employ any device, scheme, or artifice to defraud,

(b)     make any untrue statement of a material fact or omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under

which they were made, not misleading, or

(c)     engage in any act, practice, or course of business which operates or would operate

as a fraud or deceit upon any person, in connection with the purchase or sale of any

security.

## III.

**IT IS FURTHER ORDERED** that

(a)     Defendant LHV, its agents, officers, servants, employees, and attorneys shall

cooperate with the Commission in identifying, locating, marshalling, and preserving all of

the assets of LHV;

(b)     within three business days of the entry of this Order of Preliminary Injunction,

LHV shall serve on counsel for the Commission a statement identifying each account or

other asset located within the territorial jurisdiction of the United States courts that holds

any funds, accounts or other assets in the name, for the benefit or under the control of

LHV, or for which LHV is a signatory or has signing authority; and

(c)     the statement provided pursuant to paragraph III.(b) shall set forth, with respect to

each such account or other asset, the identity and location of the bank, savings and loan,

mutual fund, financial or brokerage institution, or other person or entity holding such

funds or assets, and the balance in the account or description of the assets as of the close

of business as of the date of this Order of Preliminary Injunction.

**IV.**

**IT IS FURTHER ORDERED** that defendant LHV and all persons or entities acting at its direction or on its behalf are hereby enjoined and restrained from destroying, altering, concealing, or otherwise interfering with the Commission's access to, any and all documents, books, and records in the possession, custody, or control of LHV, its agents, officers, employees, servants, accountants, financial or brokerage institutions, or attorneys relating to the assets of LHV or to the allegations of the Complaint.

**V.**

**IT IS FURTHER ORDERED** that defendant LHV shall, within five business days of the date of this Order of Preliminary Injunction:

(a)      take such steps as are necessary to repatriate to the territory of the United States all funds and assets that previously have been transferred overseas from its accounts in the United States, as described in the Commission's Complaint, which are held by it or are under its direct or indirect control, and to deposit such funds into the Registry of this Court; and

(b)      provide the Commission and the Court with an accounting of the funds and assets so repatriated.

**VI.**

**IT IS FURTHER ORDERED** that a hearing concerning the allegations in the Commission's Complaint shall be held beginning at _____ o'clock _____, on the _____ day of _____, 2005 in Room _____ of the United States

5

Courthouse, _____, New York, N.Y. 10007.  All parties shall file with

this Court pre-trial briefs not later than _____ o'clock on _____, 200_.

**VII.**

**IT IS FURTHER ORDERED** that, pending the hearing to be held pursuant to

paragraph VI above, any party to this action may, at any time, upon five business days

notice to the other parties to this action, apply to this Court to modify any provision of

this Order of Preliminary Injunction.

_11-8-05_
DATE

_____
ROBERT W. SWEET, J.

6