UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                *Plaintiff,*

                -v.-

OLEKSANDR DOROZHKO

                *Defendant,*

ECF CASE

Case No.  07 CIV 9606 (NRB-RLE)

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN REPLY TO
DEFENDANT DOROZHKO'S SECOND REPLY MEMORANDUM**

      Plaintiff Securities and Exchange Commission (the "SEC") herein replies to defendant Dorozhko's *Reply Memorandum of Law in Further Support Of Oleksandr Dorozhko's Motion to Dismiss The Complaint And To Vacate the Temporary Restraining Order, An Order Freezing Assets And Granting Other Relief*, filed on November 12th. (Docket Item #21) ("Dorozhko's Reply II"). While most of the Dorozhko's Reply II repeats earlier arguments, new documents and related arguments are included.

      The SEC has offered very compelling circumstantial evidence ineluctably leading to the conclusion that as Dorozhko calls it, his "Hail Mary", all-or-nothing bet can only be explained by his possession of confidential material IMS information – its disappointing third quarter results. The reasons for Dorozhko's trades are known only to him and he has declined to explain by invoking the Fifth Amendment. In seeming desperation, apparently Dorozhko struggled to browse the Internet in search of a cover story. Thus, Dorozhko (now a self-styled "enterprising trader") submits Exhibit 2[1],

---

[1] Since the parties are attempting to resolve evidentiary objections by stipulation, the SEC preserves and will not advance evidentiary objection in the brief.

to some how rationalize his purchases as being "consistent with other materials . . . in the public domain" (Dorozhko's Reply II, p. 5). Dorozhko's reference to Exhibit 2 is flawed and reliance on it is misplaced. There is nothing to suggest Dorozhko saw it before he traded (It is dated November 10, 2007, nearly a month after he purchased the puts) and at best the last analyst action referenced before his trades was in May 2007. Of greater significance, the analysts to which he refers for downgraded recommendations did so any where from about six months to a year before Dorozhko's trades and were interspersed with upgrades. Moreover, the chart at the bottom of his Exhibit 2, indicates that no analyst recommended a "Sell" or a "Strong Sell" during the two or three months before Dorozhko placed his Hail Mary purchases. Apparently anticipating little shelter and probable harm from analyst views, Dorozhko's includes Exhibit 4 – an explicit affirmation of IMS, and futilely attempts to discredit it with the *ex post facto* critique that Mr. Coldwell should have "dug deeper". (Dorozhko's Reply II, p. 6) Dorozhko then offers Exhibit 5 as evidence that someone in the world saw a problem involving IMS. It is unclear what Exhibit 5 is and from where it was obtained. It also appears that some of the entries (with ellipses) may be incomplete. With in the first 11 pages of Exhibit 5, there appear to be only eight entries out of dozens before Dorozhko trades. Two of the eight (at the top of the second page) have no content. The six entries on the third, fourth and fifth pages are attributed to "Anonymous" (it even could be Dorozhko), a source of dubious credibility. Rather than stating that there is a problem at IMS, these entries ask if anyone knows anything about a "reporting error", and then go into a rant about Dun and Bradstreet, IBM, and A.C. Nielsen. The last five pages of Exhibit 5 include a story from some news site called "Pharmalot" apparently dated October 1, 2007. This article simply states that a client of IMS claims some of its sales representatives were overpaid due to errors in market-share data from IMS and that IMS declined to comment. With over two weeks between this story and Dorozhko's purchases, the market had plenty of time react to this circumstance. With so much time, again one reasonably should doubt that this situation had anything to do with Dorozhko's trades just hours before the IMS release.

There is nothing to suggest Dorozhko saw any of these Exhibits before his trades. Indeed, some of the information, *e.g* . the statements in Exhibit 2, actually demonstrate even more forcefully the irrationality of Dorozhko's investment unless he had the IMS information. Thus, if Dorozhko saw the two downgrades in May 2007 and the one in November 2006, and if he saw the Coldwell recommendation in June, 2007 (Exhibit4), why did he wait months to react? After waiting so long, why did he place such aggressive trades just an hour or so before the release of the IMS information? The answers seem obvious, he was not following a legal "Highly Effective Trading Strategy", his purchases were prompted by receipt of the IMS information and he was aggressive because his chance for profits would end in an hour or so, as soon as the IMS information became public.

Dorozhko attempts distinguish the SEC references to *SEC* v. *Euro Sec. Fund,* 2000 WL 1376246 (S.D.N.Y. 2000) because *Euro Sec. Fund* did not charge a violation of Exchange Act Section 10(b) and Rule 10b-5 and with respect to at least one defendant, the SEC presented some evidence connecting one defendant to an insider. (Dorozhko's Reply II, p. 3-4). The SEC cited *Euro Sec. Fund* only to show that, even on motion for a summary judgment, the SEC does not have the burden to "produce evidence of a trail or path of inside information from an insider to a defendant." While, *Euro Sec. Fund* was an Exchange Act Section 14(e) case, Dorozhko has offered no case law that this specific burden is any different in an Exchange Action Section 10(b) case.

Dorozhko seems to misconstrue the SEC's citation of *Physicians Interactive v. Lathian Sys., Inc.,* 2003 WL 23018270 (E. D. Va. 2003) (Dorozhko's Reply II, p 4.) As he notes, it was cited for the definition of "hack." But then he goes on to state that the "Commission seems to believe, that Congress intended the CFAA to bestow any additional authority on the Commission" and concludes that if any criminal statute addresses any form of fraud, the SEC is excluded from filing a case, even if the fraud is in connection with a securities transaction. As fully briefed in the SEC's earlier court

3

papers, this interpretation is in direct conflict with Exchange Act Section 10(b), Rule 10b-5 and extensive case law.

Dorozhko offers Exhibit 6 as evidence that IMS itself was accused of wrongdoing in a 2001 antitrust action brought by the European Commission. The article is irrelevant because IMS is not a defendant and the matter concerned actions taken more that eight years before Dorozhko trades. More importantly, as this article in George Mason Law Review goes on to note, IMS was exonerated.

### VIII. Conclusion

For the reasons set forth above and in the court papers previously filed by the SEC in this matter, the SEC respectfully requests that this Court grant the requested preliminary injunction, an order extending the freeze on Defendant Dorozhko's assets for the duration of this litigation and the other requested relief and that this Court deny Defendant Dorozhko's Motion to Dismiss.

Dated: November 15, 2007

Respectfully submitted,

_____
Robert B. Blackburn (RB 1545)
Local Counsel
U.S. Securities and Exchange Commission
3 World Financial Center, Room 4300
New York, New York 10281-1022
(212) 336-1050
(212) 336-1317 (Fax)

_____
Carl A. Tibbetts (Trial Counsel)
Christopher R. Conte
Charles E. Cain
Christine E. Neal
Paul A. Gumagay (PG0805)
Suzanne E. Ashley
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-4030
(202) 551-4483 (Tibbetts)
(202) 551-4443 (Gumagay)
(202) 772-9233 (Fax)