UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 07 CIV 9606 (NRB) |
| | : | |
| OLEKSANDR DOROZHKO | : | |
| | : | |
| Defendant. | : | |

———————————————————————————

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO UNFREEZE AND TRANSFER FUNDS TO THE U.S. TREASURY

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in support of its motion seeking an order (1) directing Interactive Brokers, LLC ("Interactive Brokers") to unfreeze all funds currently being held in Defendant Dorozhko's account(s) at Interactive Brokers, pursuant to this Court's previous orders; (2) directing Interactive Brokers to transfer all such funds to the Commission; (3) directing the Commission to transfer the funds to the U.S. Treasury together with any funds currently held by the Commission that were paid or collected pursuant to a final judgment entered in this matter; and (4) grant such other relief as the Court deems just and proper.

### A.      Background

On October 29, 2007, the Commission filed a Complaint (Docket No. 1) against Defendant Oleksandr Dorozhko ("Dorozhko") and alleged that just hours before the close of the market on October 17, 2007, Dorozhko, while in possession of material nonpublic information regarding the impending announcement of negative earnings by IMS Health Incorporated ("IMS Health"), purchased 630 put options on the common stock of IMS Health. IMS Health planned to announce negative earnings via an investor relations service after the market closed on

October 17th.  Earlier that day, Dorozhko secretly hacked into the investor relations firm's secure computer network and unlawfully accessed IMS Health's earnings information.  Within minutes of this hack, and just before IMS Health's scheduled earnings release, Dorozhko embarked on an aggressive buying campaign and was able to purchase the IMS Health put options.  After the market closed, IMS Health reported third quarter earnings that were significantly below analysts' consensus estimates and the previous year's third quarter earnings. The next day, IMS Health's stock price fell 28% to an all-time low, and Dorozhko sold all of his IMS Health put options and realized profits of approximately $287,346.  The Complaint alleged that among other things, Dorozhko violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder by using "fraudulent devices, schemes, or artifices, which may include, but are not limited to, hacking into computer networks or otherwise improperly obtaining electronic access to systems that contained information about IMS Health's imminent earnings announcement."

On October 29, 2007, the Commission applied for, and this Court granted, a temporary restraining order, inter alia, freezing the proceeds of Defendant Dorozhko's trades, including but not limited to funds held at Interactive Brokers, LLC. (Docket No. 2.)  On January 7, 2008, by Order of this Court, dissolution of the Temporary Restraining Order was continued until January 14, 2008, pending appeal as to other matters.  (Docket No. 28.)  The Second Circuit, by Order dated February 27, 2008, further stayed dissolution of the Temporary Restraining Order, pending appeal of this case. (Docket No. 36.)  On July 22, 2009, the Second Circuit vacated this Court's order and remanded this case.  On November 30, 2009, this Court ordered that the Temporary Restraining Order freezing the proceeds of Defendant Dorozhko's trades (including funds held at Interactive Brokers, LLC) continue in full force until further order. (Docket No. 37.)

On March 23, 2010, this Court granted the Commission's motion for summary judgment and ordered that Defendant Dorozhko be permanently enjoined from violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S. C 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. Section 240.10b-5. (Docket Nos. 50 and 51.)  This Court also ordered Defendant Dorozhko to pay a total of $579,844.12 which consists of $286,456.59 in disgorgement (i.e. the net profits from his trades in IMS Health put options), $6,930.94 in prejudgment interest, and $286,456.59 in civil penalty.  (Docket Nos. 50 and 51.)

**B.**      **Unfreeze and Transfer Funds to the Commission**

To date, the Commission is unaware of any payments made by Defendant Dorozhko in order to satisfy the judgment of this Court.  The Commission has confirmed that as of February 26, 2018, there is a balance of $334,663.87 in Defendant Dorozhko's account(s) at Interactive Brokers, LLC which are subject to this Court's Orders of October 29, 2007 (Docket No. 2) and October 30, 2009 (Docket No. 37) freezing the funds.

The Commission now respectfully requests that this Court now enter an order directing Interactive Broker to unfreeze all funds currently being held in Defendant Dorozhko's account(s) at Interactive Brokers, pursuant to this Court's previous orders and directing Interactive Brokers to transfer all such funds to the Commission for remission to the U.S. Treasury.

**C.**      **Proposal for Payment to Treasury**

The Commission, having considered all of the relevant factors, does not propose a distribution plan in this matter.  Although it is the Commission's policy, wherever possible, to recommend a distribution plan by which unlawful gains are paid to defrauded investors, the facts and circumstances of this case make it impracticable to identify injured parties with quantifiable claims of losses.  Accordingly, the Commission now moves the Court to enter the accompanying

3

proposed Order directing that Interactive Brokers unfreeze all funds held in Dorozhko's account(s) at Interactive Brokers, LLC, transfer all such funds to the Commission and direct the Commission to transfer the funds to the United States Treasury.

1. The Equitable Remedies Ordered in this Case

"Once a court determines that a federal securities law violation has occurred, it has broad equitable powers to fashion appropriate remedies, including ordering culpable defendants to disgorge their profits." *SEC v. Miller*, 744 F. Supp. 2d 1325, 1342 (N.D. Ga. 2010), citing *SEC v. Lorin*, 76 F.3d 458, 461-62 (2d Cir. 1996); *SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1474-75 (2d Cir. 1996), *cert. denied*, 522 U.S. 312 (1997); *SEC v. Posner*, 16 F.3d 520, 522 (2d Cir. 1994), *cert. denied*, 573 U.S. 1077 (1995). "The crafting of a remedy for violations of the [Exchange Act] lies within the district court's broad equitable discretion." *SEC v. Huff*, 758 F. Supp. 2d 1288, 1358 (S.D. Fla. 2010) (citations omitted). "Disgorgement is an equitable remedy that anticipates depriving the wrongdoer of his ill-gotten gains." *SEC v. Huff*, *supra*, 758 F. Supp. 2d at 1358, citing *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 734 n.6 & 735 (11th Cir. 2005). The equity jurisdiction of this Court has been properly invoked by a showing of a securities law violation.

2. All Funds Paid and Collected in this Case Should Be Sent to the U.S. Treasury

In seeking Defendants' disgorgement of ill-gotten gains, the Commission's primary goal was to deter wrongdoing by depriving the defendant of illegal profits. "Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws." *SEC v. Solow*, 682 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010). "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains." *SEC v. Miller, supra*, 744 F. Supp. 2d at 1342, citing

4

*SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) and *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). "Although disgorged funds may often go to compensate securities fraud victims for their losses, such compensation is a distinctly secondary goal." *SEC v. Fischbach Corp.,* 133 F.3d 170, 175 (2d Cir. 1997). "The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain." *SEC v. Phoenix Telecom, LLC*, 231 F. Supp. 2d 1223, 1225 (N.D. Ga. 2001). "The measure of disgorgement need not be tied, for example, to losses suffered by defrauded investors." *SEC v. Huff, supra*, 758 F. Supp. 2d at 1359, citing *SEC v. Fischbach Corp., supra*, 133 F.3d at 176 and *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). Thus, "a district court may order disgorgement regardless of whether the disgorged funds will be paid to such investors as restitution." *SEC v. Fischbach, supra,* 133 F.3d at 176. "Indeed, a district court may grant the Commission's request for disgorgement even where no injured investors can be identified." *SEC v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993), citing *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985).

"Upon awarding disgorgement, a district court may exercise its discretion to direct the money toward victim compensation or to the United States Treasury." *SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006), citing *SEC v. Fischbach Corp.*, *supra*, 133 F.3d at 175-76. "Such a distribution is not required by statute, however, and may not be appropriate where, for example, 'numerous victims suffered relatively small amounts . . .; where the victims cannot be identified . . .; [or] where there are no victims entitled to damages.'" *SEC v. Drexel Burnham Lambert, Inc.*, *supra*, 956 F. Supp. at 507, quoting *SEC v. Lorin*, 869 F. Supp. 1117, 1129 (S.D.N.Y. 1994), *aff'd* 76 F.3d 458 (2d Cir. 1996). "Where distribution to identifiable injured parties is not feasible or appropriate, the money disgorged by the defendant is paid to the Treasury." *SEC v. Drexel Burnham Lambert, Inc.*, *supra*, 956 F. Supp. at 507, citing *SEC v. Dimensional Entertainment*

*Corp.*, 1996 WL 107290 (S.D.N.Y. 1996) and *SEC v. Marcus Schloss & Co., Inc.*, 714 F. Supp.

100 (S.D.N.Y. 1989). Where "distribution to victims is impractical and the amounts to which the

victims would be entitled are relatively small, courts have permitted payment of disgorged funds

to the Treasury." *SEC v. Dimensional Entertainment Corp.*, *supra*, 1996 WL 107290 at *2

(S.D.N.Y. 1996).  See also *SEC v. Grossman*, 2003 BL 1071 at *14 (S.D.N.Y. 2003); *SEC v.*

*Courtois*, 1985 U.S. Dist. LEXIS 20845 (S.D.N.Y. 1985) (disgorgement paid to Treasury in view

of difficulty of identifying particular claimants and likelihood that distribution would result in

only nominal distribution to claimants).

Given the facts and circumstances of this case, the Commission now believes it is not

practical or in the public's interest to distribute the funds held at Interactive Brokers.  It would be

more feasible and appropriate to order that the proceeds of Defendant Dorozhko's trades,

including but not limited to the frozen funds held at Interactive Brokers be paid to the

Commission, and in turn, remitted to the U.S. Treasury.

> **D.**     **Conclusion**

For the reasons stated above, the Commission respectfully requests that this Court grant

the Commission's motion.

Dated: April 4, 2018                                   Respectfully submitted,

/s/ Nichola L. Timmons
NICHOLA L. TIMMONS (NT-6365)
Securities and Exchange Commission
Attorney for Plaintiff
100 F Street, NE
Washington, DC 20549-5876
Tel.:   202-551-4456
Fax:    202-772-9304
E-mail:timmonsn@sec.gov

SONDRA H. PANAHI (SH-5158)
Securities and Exchange Commission
Attorney for Plaintiff
801 Brickell Avenue
Miami, Florida 33131
Tel.:   305-982-6337
Fax:    305-536-4154
E-mail: panahis@sec.gov